We will proceed now to hear argument in the next case on the calendar, which is 22-15858, D.W. Aina Le'a Development, LLC v. State of Hawaii Land Use Commission. We'll hear first from Mr. Sim, who is appearing by video. Mr. Sim, you may begin. Good morning, Your Honors. May it please the Court. My name is Sanjay Peter Sim. I represent D.W. Aina Le'a Development, LLC in this case. The main central issue in this case is whether D.W. Aina Le'a Development, LLC had standing to commence this suit and maintain this suit. There were transfers or assignments of interest throughout the course of years that D.W. participated in this development project. As set forth in the brief, there were various business reasons why subsidiary Aina Le'a LLC was created, right, had to do with the development project itself. Let me ask a question about what occurred in the bankruptcy, just so that I make sure that I understand at a global level what occurred. Were any of the creditors who showed up in the bankruptcy shorted? In other words, they received less on the dollar as part of the bankruptcy plan? No, Your Honor. Nobody was shorted on the bankruptcy plan. The final plan that was approved provided that D.W. had a certain number of years to fulfill repayment of those debts. So there was no one that was shorted on that. What was the primary objective then of the bankruptcy? Well, it was basically to stay the possible foreclosures from debtors on the property, to seek time to obtain necessary financing. It was Chapter 11, Chapter 11 bankruptcy. How was D.W.'s position altered in the bankruptcy? D.W.'s position was not altered in the bankruptcy. This was a bankruptcy that was filed by Aina Le'a Inc. for Chapter 11. With respect to this particular case, there was disclosure that D.W. Aina Le'a Development LLC had an action in the district court that pursued a temporary takings claim against the State of Hawaii. So there was complete disclosure. There was approval of the disclosure statement within the bankruptcy where it indicated that D.W. Aina Le'a was pursuing a claim for regulatory taking against the State of Hawaii. It's kind of weird because it's listed in the bankruptcy schedule for the debtor, that the debtor has an interest in a lawsuit in which it is not a party. So the lawsuit is identified as being brought by someone other than the debtor, and it's disclosed as something that the debtor has an interest in. Yes, and that has to do with the manner in which if the appellate prevails on this action and is able to obtain monetary damages, the manner in which that money gets divided between the various entities, Aina Le'a Inc., who was the debtor in possession and debtor in the bankruptcy Chapter 11 proceeding, would have an interest, financial interest, in those monetary damages. And it's also important to keep in mind that as far as Aina Le'a Inc., Aina Le'a LLC, or D.W. Aina Le'a Development LLC, it was managed essentially by two individuals, the same individuals that manage each one of these companies by the name of Bob Wessels and Rick Bernstein. These two individuals are at the same time corporations and entities. So there was an implied authority, I would say at the very least, that D.W. had the authority and standing to continue and maintain the suit. Then you tried to create actual authority in what arguably appeared to be an attempt to carry out a fraud on the court. Was this document that was created in the later period and presented as if it were signed in January of the earlier year, was that presented to the district court as actually signed on the earlier date or executed on the earlier date? I mean, so I'm going to just... Nobody tried to perpetuate a fraud. I presented a document that Mr. Bob Wessels... I think 2019 was the year. Well, that question was asked of me and I had indicated that I would have to find out more information because basically this was handed to me by Bob Wessels and upon further inquiry, Bob Wessels says that Rick Bernstein had sent it and when I spoke to Rick Bernstein, he said that it wasn't created on the prior date, it was created on this date and I disclosed that fact to the court. So as far as... Nothing indicated to the court that that had been created at an earlier date, at a later date and backdated? I mean, at the time when I was presented to the court, when the court asked me, I indicated that I did not have that information and that I would obtain that information and get back to the court. That's why that date was adjourned for a further date. So, but I think that means the answer to my question is yes. When it was presented to the court, it to all appearances looked like a document created at the earlier date, nothing disclosed that it had been created at a later date and backdated? No, it didn't, Your Honor. And at the time when I presented it, I thought it was created at an earlier date as well. So I would say that, you know, nothing was disclosed to the court that this was created at a later date. Let me ask you a question about Hawaii law. The district court operated on the assumption that once there is a contract for the sale of property, then the buyer under the contract has beneficial, equitable interest in the property that could give rise to a right to assert a takings claim. So who under Hawaii law was the holder of those rights during the period before this sale closed? Well, before the sale closed, it was actually DW. I think that DW obtained pre-closing possessory rights on February 9, 2009. Thereafter, they expended money within the project itself, substantial amount of monies. The property was not reverted until April 25, 2011. So during that period of time, everything was DW. DW assigned its rights to what it had to NLLC in 2012 following the reversion and while this matter was pending before the Hawaii State Court that eventually went up to the Hawaii Supreme Court. But NLLC at that time was a subsidiary of DW, Analea Development LLC. I'm not sure if that answers your question, Your Honor. Well, you know, at that point, you know, Analea is the entity that is the buyer, at least under the paper. Now, DW has obligations as well, but the listed buyer is the other entity. So why isn't that the entity that under Hawaii law would have the beneficial rights that the district court pointed to? Well, I mean, you know, I'm looking at this as a central purpose that each one of these entities have a central purpose to develop this property, all for the benefit of DW, Analea Development LLC. Analea LLC was a mere subsidiary designed just to obtain financing on the affordable housing area of this development. So if you're asking me literally, Analea LLC has a possessory interest in this property. Right, but my question is, does DW also or would DW only have such rights if it had an assignment from the other entity? I believe that DW also had those rights. I mean, as far as the monies that continue to pour, the financial guarantees that DW gave to its lenders on this particular project, the role that DW had in developing this project, which included, you know, the master planning, EIS reports, planning meetings, that they had a very central role in this development, that they were working in conjunction together with Analea LLC with common management. I want to clarify what you said before. When did DW assign its right to the takings claim to the bankruptcy court? The bankruptcy court said that Analea had now the right to the takings claim. That had a retained cause of action that DW, Analea Development LLC is continuing the prosecution of this action. Why would the bankruptcy court say that if Analea didn't have it, if DW still had it? Well, I mean, I think that the Analea had the retained cause of action, Your Honor. Yes, correct. But the bankruptcy court permitted DW to maintain this action against the state of Hawaii. Mr. Sim, could I ask you a question? What is your position with respect to the $17 million note unsecured to be paid out of the sale of the land by Analea to DW? Yes, and DW had... My question to you is this, are you maintaining that that's a separate ground for standing in this case? That could be a separate ground for standing in this case because they have a... I'm not asking you whether it could be. I'm asking you whether that is your position. That is the position, Your Honor. Okay. Can I ask a question? Did the bankruptcy plan say anything about how any proceeds from the lawsuit, if it was successful, would be distributed? The bankruptcy court did not make that determination, Your Honor. Okay. It was a retained property of Analea? It became a retained cause of action for Analea. And so it leaves bankruptcy with that and presumably would retain whatever funds were obtained with nothing from the plan saying anything about that. Am I reading that correctly? That would be correct, Your Honor. The plan did not basically provide in the event that any money is received as a result of these causes of action, how that money is to be distributed. Okay. Because the district court makes a reference to sort of like jumping the line in terms of that the creditors should somehow be treated unfairly if DW gets a portion of the proceeds of the lawsuit that would be taken out of the hands of the creditors. But I'm not seeing where that is in the structure of the bankruptcy plan. Yeah, I don't see that at all, Your Honor. You know, this is not money that would be taken out of the hands. I mean, these creditors still have, you know, secure security interests in this property as far as the land is concerned. So I'm not exactly sure where that came from and how the has a retained interest to collect $17 million from this development once the development became profitable and profits were being distributed within the entities. I have another... At this point in time... No, I have another question which is about the district. You had, as the district court identified, three different potential takings theories and the district court rejected two of them in the summary judgment ruling and then on top of that said that there was a standing problem as to the entirety of the case. Your opening brief does not challenge the first of those rulings, that two of the three theories are gone. And so that seems to me to be a forfeiture that those issues are just now dropped out of the case and that even if you win on standing, you only go back on the one theory. Am I reading that correctly? And if you think not, why am I not? I mean, you know, I don't think I waived the three elements. I mean, I'm basically challenging the entire district court's ruling on that issue. District court rules against you on a claim based on two grounds and your opening brief only challenges one of them. That's gone because that claim was rejected for two reasons. You've only attacked one of them so the other one stands and the claim is washed out of the case at that And at this point in time, I'd like to reserve the additional time for rebuttal if I may. Okay. All right. We'll hear now from Mr. Day. You may proceed. May I please the court? The following words are the words of U.S. District Court Judge Mulway. Yes, speak up a little bit more. Oh, pardon me. The following words are from the dispositive order of Judge Mulway. Quote, no admissible evidence. Frustrated this court's efforts, failed to offer any coherent argument, contradicted by the very documents that DW cites, careless, misleading. There's a fundamental problem from my point of view in how the district court approached this case because the district court read this bankruptcy plan and the reference that, you know, Inalaya has rights in the suit as, well, they have the rights in the suit, so factually there must have been an assignment of the suit from DW to Inalaya. I just don't see where that factual assumption is correct. The schedule very clearly said that it was the suit brought in DW's name, and it seems kind of a mismatch because the suit's brought in the name of another, it wasn't like, oh, here's a suit by Inalaya or not a suit that Inalaya, here's a suit that's actually been filed, here's the case number, and it's brought by DW. Inalaya isn't even a party, and that's what's retained. It's not described. So this notion that we were sent on this, find the assignment from DW to Inalaya, just seems like wrong. They were not paying attention to who in the contract really had the rights, and they listed the suit brought by one company as being the other without worrying about whether there was an assignment. So this whole, tell me why you think I'm wrong if I'm wrong in saying, I don't see why we had this factual premise that, well, when did the assignment occur? Maybe there was an assignment, and they just listed something in the name of somebody else's belonging to Inalaya. Thank you, Your Honor. I think there's several reasons why in the factual record that established that an assignment did occur. Among them, I think probably the most important is that, at least on five occasions in their briefing, they admit that the claim was assigned. It was assigned. So let's see. I mean, the district court said, here's the hoop you have to jump through. Now, show me you can jump through it. And so their brief is filled with things that say, I can jump through that hoop. But I'm questioning the whole premise that the district court said, this case has to rest on an assignment from DW to Inalaya, and show me where it is. I'm just not seeing where that's true. This whole thing rested on beneficial rights under Hawaii law when you have a contract. And both DW and Inalaya were parties to that contract to buy the property. The title was to be in Inalaya. Both of them shared the obligations. Why didn't that mean they both had beneficial interests, and the whole assignment thing is a red herring? Well, I mean, if we look at the opposition that was filed to the motion for summary judgment, and what was presented to the court, and what Judge Mulway had before her, was an argument that, yes, we had assigned the claim, but we retained a $17 million interest. The only evidence in the record that supported the fact that there was a $17 million interest coming back was a 2012 assignment of rights from DW to Inalaya. But that $17 million was specifically linked to the sale of units after they were developed. There was nothing in there that related to the cause of action at issue. So what was before initially the court was an agreement. Yes, we assigned the claim, but $17 million is reserved. But, counsel, the $17 million debt, if it's real debt, right, is severely depreciated by the reversion decision, is it not? Therefore, there is a loss to the creditor, DW, of the value of the $17 million during the time that there was a reversion from residential to agricultural. And that, what does that give DW standing in this lawsuit? Well, so a taking is established as of the date of the alleged taking, right? So you measure everything as of that date, which is, in this case, April 25th, 2011. The agreement that was reached in this case, or that we're talking about now, was January 2012, which postdated it by about eight months. The $14 million was not at all linked to the reversion. It was actually presuming that lots would be built in the future, and from that $17 million would flow from Inalaya LLC to DW. Right. So the value of that note during the time of the reversion, before there was a re-reversion, was severely depreciated, wouldn't you agree? I mean, there wouldn't be any buildings built, there would be no sales, there would be no payment on the note. I believe that it was on the $17 million note. Because, Your Honor, in the complaint, the claim that is made is relating to DW's development rights. A note that is entered into after, you know, several months after the actual date of the alleged taking is not a subject matter of this case, beyond which, you know, it had been argued by DW that that was its basis, why that, even though it had assigned the claim, it retained some sort of money in that claim. In your position, the DW simply has an alleged, you disagree with Mr. Sim, DW has an alleged standing on the basis of the $17 million note, correct? Correct. And that's very clear from the complaint. Going back to this point of Hawaii law, which underlay the district court's ruling, that when you have a contract to purchase real property, that once a contract is signed, the buyer then has beneficial equitable interest that could give rise to a takings claim with respect to the property. That was kind of the of the district court's analysis. Why would that analysis extend only to Onalaya and not to both of the signatories to the contract who had the obligations and rights under it, which would include DW? Which contracts are you referring to? The contracts to purchase the property. The whole theory of the district court's acceptance of one possible claim for takings. She dismissed two of them but kept one. The one was based on this idea that when you sign a contract to purchase a piece of property, even though you're not the title holder yet, the title holder is reduced to a bare legal title and the equitable interests are held by the purchaser who is carrying out the takings claim that went forward. Who is the holder under Hawaii law of those beneficial rights in that kind of a contract situation? Is it just Onalaya or is it both DW and Onalaya because they're both parties to that contract and have obligations and rights under it? My understanding is that based on the way that the contracts moved in terms of sequencing, is that in February 9th, 2000, or pardon me, February 11th, 2009, that was the initial purchase and sale agreement, which is called the contract. That was just between Bridge and DW. As of December of that year, of 2009, Onalaya LLC actually was conveyed and closed on title to the affordable housing parcel of the property. That was obviously within the realm of Onalaya LLC. The remainder of the property never closed with respect to DW at any time. With respect to, certainly with title, we're talking about only Onalaya LLC. So just clarify then which parcels. Are we only talking about the parcels that closed in December of 2009 or is part of the claim relating to other parcels that never closed? Well, I think that for DW, its claims relate to parcels that never closed because it didn't own Onalaya or didn't own the affordable housing parcel on the date of the of 2009. The taking was in April of 2011. Within that time period, DW had no ownership interest over any of the parcels. So the parcels that closed in December 2009, there was a formal change of legal title recorded on the property to Onalaya and all the obligations of the purchase agreement are then completed and closed? That's correct. I'm otherwise open for your questions at this time. So your understanding is the takings claim that DW is trying to assert relates to the parcels that didn't close and under the provisions of the agreement, of that agreement governing those parcels, who had the beneficial rights that I've referred to under Hawaiian law? Is it DW and Onalaya or is it one of the other? Unclosed parcels? I mean, our position was that it was Bridge Onalaya, which is the landowner in the case and their bridge was, we had an old trial on it and previously where they were the landowner. And I mean, they were the ones that ultimately, you know, brought the reversion claim. The, you know, I mean, what struck us at the beginning of this case as we were looking at it was that DW Onalaya was asserting claim regarding the regulation of land for which it had never achieved ownership of. And all it had was a contractual, basically a purchase and sale agreement, and that had been superseded over time. From that, when we look at what Judge Mulway did, and this is something that we argue in our answering brief, is that the claim at issue here on the taking side, so basically when we just talk about the property interest at issue, as pled and as presented at all times, it related to what DW called development rights. DW's development rights. Now, there is no document that provides a source for these development rights. When we had the, when we... Isn't the predicate for this development rights claims the first takings claim that the district court dismissed on other grounds and that they've conceded now? Is that in the case? That's correct. And our position is that that's their whole claim. We even look at the reply brief that they filed. They said, DW's property rights were developed. This is on page 28 of the reply brief. DW's property rights were development rights to the property. That's their claim. The fact is that with respect to their arguments on development rights, they didn't present any arguments on So, you know, our position is that the whole case, even if, and I'd like to get back to the assignment issue before I close, but even if we get past this assignment issue and you find that there was standing because of, there was error with respect to the assignment analysis, that ultimately, you know, for those reasons, just on the property interest grounds, this court should affirm. All right. You said you wanted to get back to the... I would like to. Yes. I think when it's important when looking at how this case developed on and sort of analyzing this assignment issue is the sequencing along with the way that Judge stated that there were three things that were undisputed by the plaintiff, DW in this case. One, that an assignment of rights, you know, ultimately would divest a party of standing. Two, if that happened before the filing of the lawsuit, they would not have standing. And three, that INALEA had admitted that it had assigned it at some point in time. There is substantial evidence in the record of the fact that there was an assignment of rights. And again, there was five times in briefs, both in the opening brief, in the reply brief, and in the briefing below, there's statements, explicit statements by EW that said that it had assigned the claim to INALEA, Inc. Now, from that, what we know from the record is that 2012, there was an assignment. That was what the $17 million was linked to. 2015, there was an assignment, and that was it. At a hearing, the second hearing, DW was asked point blank by the court, when was the claim assigned? And DW said it was either 2015 or 2017. Then, you know, after that, we have a submission of minutes, and this is Volume 2, ER 81, where there's a document from minutes where it would say that INALEA, Inc. was going to be filing the case. It still seems like something of a red herring, because, you know, who had the rights to bring the claim? And now we're only talking about the claim that's in the second of the three buckets, the interference with the right to possess the residential property, and then the district court relies on Hawaii law generally recognized that purchases of real property hold rights protected by the takings clause and this beneficial interest. And if those rights, as a matter of Hawaii law, pertained to INALEA because INALEA was the legal title holder of the relevant parcels, and that transaction had closed before the taking took place, then the only takings claim under Hawaii law is vested in INALEA. And so this whole search for an assignment from DW and INALEA is just ridiculous. So the rights were vested in INALEA for the relevant claim, and, you know, the bankruptcy schedule then lists a lawsuit that they claim to have an interest in with the wrong party as the plaintiff. So I don't see why we're looking for an assignment from DW to INALEA. The rights are INALEA's under Hawaii law, and there's just a mistake in the caption. I mean, you almost would think, well, where's the assignment from INALEA to DW that you brought the lawsuit by DW? Almost backwards. Right. I suppose I agree with that. Yes. You know, I think that the... I mean, did no one in the bankruptcy court thought, it's odd you're claiming a right to a lawsuit in which you're not a party? That's kind of weird. I think that, you know, it is weird, but I mean, so I will say this, though. I mean, so I understand that it is weird. I get that. But I think that weird things have happened in this way before. And one of those would be in that Washington tennis case that we cited, and that was from the DC Circuit, or pardon me, the District of Columbia, where basically there had been an assignment of a contract to basically another entity that was related to it. Then the claim was brought by the original entity that had the asinore in the first place, basically because who knows, right? Who knows why they did it that way? But, you know, I think that sometimes those things kind of happen, and it is weird, and it may not have an obvious explanation. But, you know, the fact is that there was admissions, at least five admissions. All right. So if Adelaide is the correct rights holder, and it holds the rights because that's whom Hawaii law gives them to, and not by virtue of some phantom assignment, then why wouldn't it be corrected at the right party? I mean, nobody cited Rule 17, and Rule 17 specifically says that if the suit is brought in the name of someone other than the real party in interest, then the real party in interest is to be brought in. And that seems to be what belonged to this other related entity. Why isn't this just a Rule 17 swap? And I don't see why it wasn't corrected. Well, it was raised as a standing issue. And it's not standing. It's just substantive law. Who has the rights? Who's the plaintiff under Hawaii law who has the rights? It's not really, it's who has a cause of action, not so much who has standing. They certainly have an injury. They've been hurt quite a bit by what the state did. But who has the cause of action is just state law now. And we're going far afield of what had been briefed below. I mean, basically what Judge Mulway had held was that many of these arguments had been waived, including with respect to the fund liquidation holding case, which she did. The one issue she did decide is that she wouldn't let this error be fixed. Because, you know, everyone recognized that the rights belong to INALEA. And so the question is, well, why not bring in INALEA? And the response was, well, INALEA now is assigned them back to DW. And so catch-22? It seems crazy. Well, there were many other reasons why the court could have granted that. The motion to amend was founded on the idea that the state waived its argument that DW lacks standing. That was the basis for the motion. Which motion? The motion to amend the scheduling order to allow them to add INALEA, Inc. as a party. The full basis for why that motion was brought was that DW claimed that they were confused or that we had waived our argument that standing was lacking. How can you waive standing? That's what we said. And so if you look at that motion and the grounds for that motion, I mean, there were about 20 different reasons to deny that motion, along with the reasons... But the one that the district court picked for denying the motion is that, well, we can't add INALEA because they assigned away the rights. And so... But the party who was the signee at that point is the party before the court. And we'll note that, for the record, that INALEA, or pardon me, DW, in its answering brief and its argument against that, that's a waiver of that argument. Can we still address it? Well, for example, on the development rights, contractual development rights, it's a pure legal issue. Can we still address that? Which issue? On the takings for the right to development. I mean, it's a mess. What happened in the district court, for the record, is a complete mess. It's unclear what happened. I mean, the arguments, we were making arguments, maybe that wasn't made, but I mean, can we still consider that? I think that if you were to consider that, you should also consider the six other reasons in my answering brief for why that motion would have necessarily been denied, including, among other things, the fact that the court had already said that it would deny the motion, any theoretical motion, to file a supplemental pleading on the grounds of lack of diligence and on the fact that they filed a misleading document that was backdated, which, you know, plaintiff's counsel at the hearing, when we discussed this, said that it was his understanding that the 2022 backdated document was in box files within, you know, plaintiff's office. It was presented at that time contemporaneously as being a genuine document dated January 29, 2021, and the court explicitly found that that was misleading and would not have you to go over if you want to say any final thought before wrapping up. Yes, your honor. I would just ask that you take a look at the opening brief and the reply brief. You know, the lack of arguments addressing the points of many of, most of which we've addressed today, are nowhere to be found in the opening brief or the answering brief. There might be interesting issues underneath all of this, but this is an issue where, you know, these issues have not been preserved below or above, and we respectfully request that the judgment be affirmed. Thank you. All right. Thank you, counsel. All right. You have some time for rebuttal. I appreciate that. Thank you, your honor. With respect to, you know, I mean, I'm the first attorney that's going to say that this is a mess, right? That as far as the assignment from, to Annalea. Well, what's your response to counsel's argument that you've waived and forfeited most of your ability to object to the district court's refusal to allow the party, proper party issue to be corrected? I don't think that we waived that, your honor. There was nothing, nothing, you know, we, we addressed this, this issue in our briefs regarding the rejection of the scheduling order. So I do not think that that statement was correct, that we didn't waive that, you know, the one, one reason is why we sought an amendment of the scheduling order is so that we could bring in the proper party to this, right? That was the point of that scheduling order, that if there is a question that we've got the wrong party, then give us an opportunity just to replace the party, right? Give us an opportunity in the interest of justice to pursue this claim, which in which clearly there was a takings. Of course, we're going to have to prove the damages aspect of this, but certainly in the interest of justice, if Annalea LLC, Annalea Inc. was the proper party, then permit us an opportunity to have those parties entered into the case. As I stated before, all of these entities under common management, you know, effectuating that is, is, is very easy from our perspective. Well, it, it may be that the only claim left in the case, even if the party is fixed, would be Annalea's interference with possession claim. And under the published decision in the bridge case, that, that seems like a very perilous claim. It's still, still a claim that we can pursue. I mean, even if it's an uphill battle, we're still willing to, to pursue that claim, number one. And then number two, I think there was, you know, in the state's, state's argument, there was some questions regarding property ownership. You know, one, one thing, one aspect of this development was that there were two distinct parts. One is an affordable, affordable housing. And the other is the residential parcel, which is by and large, much, much larger than the affordable, affordable housing, the section of this property. So the affordable section was where the transfer of title occurred to Annalea LLC, but that transfer of title did not occur to LLC alone, right? Until much later in time, right? They, they did. Do you agree that the only parcels that are at issue are the residential parcels? I do not agree to that, Your Honor. Simply because, you know, they had pre-closing possessory rights to the residential parcels, right? This was an undertaking that was being developed, that substantial commencement of this property occurred through DW. DW is the one that initially, prior to this reversion, had spent close to, I believe, $31 million. Is there a takings claim with respect to property that was subject to a contract of sale that never closed? It did close. The residential parcel did close. But you got to keep in mind that as far as this development is concerned, you've got the affordable housing that was a pre, a condition proceeding to the development of the residential parcels. That residential parcel, although it was under contract and during this whole period of time, DW actually ended up paying double the original contract price in negotiations with Bridge to close that residential parcel. Parcel, I'm sorry. So, you know, the statement that it never closed is false. It did close, right? What closed ahead of time, earlier on this development, was the affordable housing, which was the condition proceeding to developing the residential parcel, right? So that refers to the December 2009 closing that you're opposing council. That's the affordable housing only. And when did, when was the second closure to which you're referring? That occurred in 2015. That occurred 2015, where the original contract price, for my recollection, was about $11 million at that time. But that parcel closed for $26 million. So the statement that it never closed is false. The legal title holder of that is Zinalia? Yes. Yes. But along those lines, it's also very important to keep in mind that DW never stopped developing this property along with Analia, right? So they've always had the beneficial ownership interest in this property, although title was held in Analia. Okay. All right. Thank you, council. We thank both council for your arguments in this case, and the case just argued will be submitted.
judges: BEA, COLLINS, LEE